**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

RUSSELL BERGER
ADC #115855                                                                                           PETITIONER

VS.                                          5:07CV00298 JTR

LARRY NORRIS, Director,
Arkansas Department of Corrections                                                     RESPONDENT

**MEMORANDUM AND ORDER**

**I.  Background**

Pending before the Court[1] is a Petition and an Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Docket entries #1 and #30.)  Respondent has filed Responses (docket entries #11 and #34), to which Petitioner has filed a Reply.  (Docket entries #14.)  Thus, the issues are now joined and ready for disposition.

All of Petitioner's habeas claims arise from a major disciplinary conviction he received while he was incarcerated in the Varner Unit of the Arkansas Department of Correction ("ADC").  Before addressing these habeas claims, the Court will review the relevant procedural history of the case.

Petitioner is currently incarcerated in the East Arkansas Regional Unit of the Arkansas Department of Correction ("ADC").  He is serving two consecutive life sentences for raping a five-year-old boy.  *See Berger v. State*, 343 Ark. 413, 36 S.W.3d 286 (2001).

---

[1] The parties have consented to proceedings before a United States Magistrate Judge.  (Docket entry #15.)

On July 23, 2007, ADC inmate David Fain wrote a letter to the news media and the Governor's office stating that he had "confidential information" to disclose about "activities which could lead to a potential escape." (Docket entry #24, Ex. B. at 22.) ADC then initiated an Internal Affairs investigation.

Internal Affairs Administrator James Gibson interviewed Fain on July 31, 2007. (Docket entry #24, Ex. B at 13-15.) Fain stated that Petitioner worked in the maintenance department of the Varner Unit, and had access to all of the institution's keys and locks. According to Fain, Petitioner had a key to a library door that led to the gymnasium. Fain asked Petitioner if he could get a copy of the key so he could meet another inmate in the gym. Petitioner told Fain that he could not copy the key, but he could change the lock and give him the new key. According to Fain, Petitioner did this and also offered to give Fain a key to the cages over the library computers so that they could play computer games. Petitioner also installed an additional "latch" on the library door to delay officers entering the library and give them time to turn off the computers.

Fain told Gibson that Petitioner later approached him about an escape attempt from Varner. Petitioner told Fain that he "had something in the works" but did not elaborate. Fain told Petitioner that he was not interested because he was going to become eligible for parole in a short time.

After the interview, Gibson instructed Internal Affairs Investigator Courington to administer a "computerized voice stress analysis test" to Fain. Courington stated that "no deception was indicated" on Fain's responses to the questions he was asked concerning his allegations.[2]

---

[2] Among other things, Fain answered "yes" to the following questions: (1) "Did Inmate Berger ask you to escape with him?"; (2) "Did Berger change a lock on the side door for you?"; (3) "Did Berger give you the key to the new lock on the side door?"; and (4) "Did Berger install a latch on the inside of the library door?". (Docket entry #24, Ex. B at 14, 21, 23.)

Deputy Warden Luckett told Gibson that his key no longer worked in the "side door" between the library and the gym. Luckett also stated that there was a "latch" found on the inside of the door of the library and that he had it removed, although he did not, at the time, associate it with Petitioner. Gibson also searched ADC's internal database, "eOMIS," and found that Petitioner was listed as a "locksmith." After Gibson informed Warden Luckett about Fain's allegations of Petitioner's misconduct, Petitioner was placed on "investigation status administrative segregation."

On August 21, 2007, Petitioner was charged in a Major Disciplinary with: (1) "12-1" violating ADC policy by planning an escape; (2) "07-1" changing the library lock and placing a latch on the library door without permission from staff; (3) "16-1" attempted escape; and (4) "17-1" violation of state law. (Docket entry #24, Ex. B. at 9.) Petitioner was provided a copy of the Major Disciplinary on August 29, 2007, and he requested witness statements from Warden Luckett and Officer Crompton. *Id.*

In a witness statement dated August 29, 2007, CO II Malcomb Crompton, who was responsible for "key control" at the Varner Unit, stated that he did not give Petitioner permission to change any locks to the library leading to the gym, nor did he give him permission to place a latch on the door. (Docket entry #24, Ex. B. at 17.) On September 6, 2007, Warden Luckett sent an email indicating that he did not have any additional information to provide. (Docket entry #24, Ex. B. at 18.)

On September 7, 2007, DHO C.M. Andrews conducted an disciplinary hearing. In his statement, Petitioner: (1) claimed that Fain lied because he was trying to get out of trouble; (2) attacked the Major Disciplinary because it was written too long after the alleged misconduct; and (3) claimed that he should have been charged with "tampering a locking device" rather than "misuse

of state property." (Docket entry #24, Ex. B at 10.) Petitioner was found guilty of "12-1" and "7-1," and not guilty of "16-1" and "17-1." In explaining the factual basis for his decision, the DHO credited the Internal Affairs investigation. (Docket entry #24, Ex. B. at 11.)

As a result of the disciplinary conviction, Petitioner's custodial classification was reduced to "class IV," and Petitioner was placed in punitive isolation for 30 days. (Docket entry #24, Ex. B. at 10.) Petitioner unsuccessfully appealed the disciplinary conviction to the Director of ADC.

In this habeas action, which Petitioner filed on November 27, 2007, he seeks to have the Court vacate his disciplinary conviction. (Docket entries #1 and #30.) Petitioner claims that the disciplinary proceeding violated his due process rights because: (1) the Major Disciplinary was written by an officer without "first-hand knowledge" of the allegations; (2) he was mischarged with "misuse of state property" rather than "tampering with a lock"; (3) no ADC policy prohibits an inmate from planning an escape; (4) he was not charged within five days of the alleged misconduct, as required by ADC policy; (5) he was not provided a copy of the charging document within five days of the charges, as required by ADC policy; (6) the two charges for which he was acquitted have not been "removed from his file;" (7) Fain lied and Petitioner was prevented from "providing evidence to the contrary;" (8) he was not allowed to confront and cross-examine the witnesses; and (9) Gibson, who conducted the internal affairs investigation, also supervises the disciplinary hearing officers ("DHOs"), thus resulting in a conflict of interest. (Docket entries #1, 2, at 30.)

Respondent argues that: (1) Petitioner has not stated cognizable habeas claims; (2) Petitioner failed to exhaust his state court remedies, because he failed to pursue a claim under the Administrative Procedures Act; and (3) Petitioner's claims fail on the merits.   For the reasons

4

explained below, the Court concludes that Petitioner has failed to state a cognizable habeas claim.

## II. Discussion

The United States Supreme Court has held that a disciplinary conviction which results in a prisoner losing *good time credits* implicates a liberty interest protected by the Due Process Clause. *See Wolff v. McDonnell*, 418 U.S. 539, 555-58 (1974).[3] Because the loss of good time credits affects the duration of a prisoner's sentence, a § 2254 habeas action is a prisoner's exclusive remedy. *See Portley-El v. Brill*, 288 F.3d 1063, 1066-67 (8th Cir. 2002). In contrast, a claim by a prisoner challenging a disciplinary action that does *not* affect the length of his confinement must be brought under 42 U.S.C. § 1983. *See Muhammad v. Close*, 540 U.S. 749 (2004) (*per curiam*).

Petitioner makes the conclusory statement that he has lost "good days," and that his disciplinary conviction might adversely affect his application for executive clemency. (Docket entry #30 at 4.) Respondent argues that Petitioner, who is serving consecutive life sentences, cannot "lose" good-time credits affecting the length of his confinement.[4] Thus, Respondent contends that

---

[3]The Court in *Wolff* also held that due process requires that an inmate, who is the subject of a disciplinary proceeding, must receive: (1) written notice of the disciplinary charges at least 24 hours before the disciplinary hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement from an impartial decision maker identifying the evidence relied on and the reasons for the disciplinary action. *See Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974). However, the Court also held that a prisoner does *not* have the right of confrontation and cross-examination of witnesses. *Wolff*, 418 U.S. at 556, 567-69.

Eleven years later, in *Superintendent v. Hill*, 472 U.S. 445, 454 (1985), the Court held that the decision of the prison disciplinary hearing officer is only required to be supported by "some evidence in the record." Where the record contains some evidence to support the decision of the DHO, the decision cannot be characterized as arbitrary. *Id.* at 457.

[4]Under Arkansas law, an inmate serving a life sentence is *not* eligible for parole unless his sentence is commuted to a term of years by executive clemency. Ark. Code Ann. § 16-93-607(c).

the reduction in Petitioner's custodial classification cannot affect the length of his confinement.

The Court agrees. According to Petitioner's institutional file, the disciplinary conviction did *not* result in Petitioner losing any good time credits. (Docket entry #24, Ex. B. at 10; Docket entry #34, Ex. B at 3.) While Petitioner's reduction in classification does affect his future accrual of good time credit, his consecutive life sentences make that entirely "theoretical injury" a moot point. Thus, because Petitioner's reduction in custodial classification stemming from the disciplinary conviction cannot affect the length of his confinement, the Court concludes that he has not stated a cognizable habeas claim pursuant under 28 U.S.C. § 2254.

Alternatively, even if Petitioner has stated a cognizable due process claim, it would still fail on the merits. There unquestionably was "some evidence in the record" to support the DHO's decision.[5] Under *Hill*, federal courts are required to defer to the judgment of prison officials as long "as some evidence in the record" supports the disciplinary conviction and the due process requirements of *Wolff* are satisfied. This limited review does not require examination of the entire

---

Furthermore, Respondent points out that Petitioner's institutional file reflects that Petitioner did *not* lose any good-time credits as a result of the disciplinary conviction. (Docket entry #34, Ex. B at 3.

[5]With respect to the Petitioner's allegation that the DHO had a conflict of interest because he was supervised by the Internal Affairs Administrator, this is not sufficient to establish an interest adverse to Petitioner's interests "so direct, personal, and substantial" as to give rise to a due process violation.

Disciplinary hearing officers are "entitled to a presumption of honesty and integrity," and "the constitutional standard for impermissible bias is high." *See Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir.2003). For a petitioner to prevail on a claim that a DHO was biased, he must show that officer's conduct "gave [the officer] an interest adverse to [the inmate's] 'so direct, personal, and substantial as to give rise to a due-process violation.'" *See Ivy v. Moore*, 31 F.3d 634, 635 (8th Cir.1994). There is simply no evidence in the record that the DHO had any personal interest in the circumstances giving rise to the charges against Petitioner or in how those charges ultimately were resolved.

record, independent assessment of credibility of witnesses, or the weighing of the evidence. *Id.* at 455. Prison officials can permissibly rely on violation reports and hearsay to find inmates guilty of disciplinary infractions. *See Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir.2008); *Moore v. Plaster*, 313 F.3d 442, 444 (8th Cir.2002). A report from a correctional officer, even if disputed by the inmate and supported by no other evidence, still constitutes "some evidence" upon which to base a prison disciplinary decision. *See Hartsfield,* 511 F.3d at 831. The record in this case demonstrates that the disciplinary hearing satisfied the due process requirements of *Wolff* and that "some evidence in the record" supports the disciplinary conviction as required by *Hill*.

### III. Conclusion

IT IS THEREFORE ORDERED THAT the Petition and Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (docket entries #1 and #30 ) are DENIED, and this case is DISMISSED, WITH PREJUDICE

Dated this 19th day of November, 2009.

_____
UNITED STATES MAGISTRATE JUDGE